UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 04      1308**

- - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

              Plaintiff,

   - against -

COLTEC INDUSTRIES, INC.;
GOODRICH CORPORATION;
55 MOTOR AVENUE LLC;
CUBBIES PROPERTIES, INC.;
JEFRY ROSMARIN;
J. JAY TANENBAUM;
JAN BURMAN;
JEROME LAZARUS;
LIBERTY ASSOCIATES;
WILLIAM HELLER;
KOCH-GLITSCH, LP;
BEAZEREAST, INC.,

              Defendants.

- - - - - - - - - - - - - - - - - - X

COMPLAINT

Civil Action
No. CV-

GARAUFIS, J.        , J.)
            , M.J.)

LEVY M.J

      The United States of America, by authority of the
Attorney General of the United States and the United States
Attorney for the Eastern District of New York, through the
undersigned attorneys, acting at the request of the Administrator
of the United States Environmental Protection Agency ("EPA"),
files this complaint and avers as follows:

### STATEMENT OF THE CASE

    1.  This is a civil action brought pursuant to Sections 106
and 107 of the Comprehensive Environmental Response,
Compensation, and Liability Act, 42 U.S.C. §§ 9606 and 9607, as
amended ("CERCLA").  The United States seeks injunctive relief

-2-

and recovery of the unreimbursed response costs it has incurred
and will incur in connection with a site known as the Liberty
Industrial Finishing Superfund Site, which includes an area
approximately 30 acres in size, and is located at 55 Motor
Avenue, in the unincorporated Village of Farmingdale, Town of
Oyster Bay, Nassau County, New York, and designated on the Nassau
County tax map as Lots 327 and 329 of Block 518, Section 48.

2.   The Liberty Industrial Finishing Superfund Site
encompasses approximately 30 acres, as well as the areas where
hazardous substances and/or pollutants and contaminants released
at or from the 30-acre area have come to be located (collectively
"the Site").   The 30-acre area of the Site consists of the
following two fifteen-acre parcels: (1) Lot 327, which is vacant,
largely unpaved, and abuts a large recreational park in the Town
of Oyster Bay, the Ellsworth-Allen Park (the "western parcel");
and (2) Lot 329, which currently includes approximately ten
buildings in varying states of disrepair that are leased to
approximately a dozen tenants engaged in warehousing, automobile
repair, trucking, and product distribution (the "eastern
parcel").

JURISDICTION AND VENUE

3.   This Court has jurisdiction over the subject matter of
this action pursuant to Sections 106, 107 and 113(b) of CERCLA,
42 U.S.C. §§ 9606, 9607 and 9613(b), and 28 U.S.C. §§ 1331 and

-3-

1345.

4.   Venue is proper in this judicial district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1391(b), 1391(c) and 1395, because the claims arose, and the threatened or actual releases of hazardous substances occurred, in this district.

THE DEFENDANTS

5.   Coltec Industries Inc. ("Coltec") is a corporation with its principal place of business at 5605 Carnegie Boulevard, Charlotte, North Carolina.

6.   Goodrich Corp. ("Goodrich") is a corporation with its principal place of business at 2550 West Tyvola Road, Charlotte, North Carolina.

7.   55 Motor Avenue LLC ("55 Motor Avenue") is a limited liability company with its principal place of business at 1664 Old Country Road, Plainview, New York.

8.   Cubbies Properties, Inc. ("Cubbies") is a corporation with its principal place of business at 1664 Old Country Road, Plainview, New York.

9.   Jefry Rosmarin ("Rosmarin") is an individual residing in Huntington, New York.

10.   J. Jay Tanenbaum ("Tanenbaum") is an individual residing in Hewlett, New York.

11.   Jan Burman ("Burman") is an individual residing in Old

-4-

Westbury, New York.

12. Jerome Lazarus ("Lazarus") is an individual residing in Old Westbury, New York.

13. Liberty Associates is a partnership with its principal place of business in Roselle, New Jersey.

14. William Heller ("Heller") is a general partner of Liberty Associates residing in Roselle, New Jersey.

15. Koch-Glitsch, LP ("Koch") is a limited partnership with its principal place of business in North Wichita, Kansas.

16. BeazerEast, Inc. ("Beazer") is a corporation with its principal place of business in Pittsburgh, Pennsylvania.

17. Each of the defendants is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

<u>STATUTORY BACKGROUND</u>

18. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a), 9601(25).

19. Under Section 104(a)(1) of CERCLA:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or

-5-

welfare, the President is authorized to act, consistent
with the national contingency plan, to remove or
arrange for the removal of, and provide for remedial
action relating to such hazardous substance, pollutant,
or contaminant at any time (including its removal from
any contaminated natural resource), or take any other
response measure consistent with the national
contingency plan which the President deems necessary to
protect the public health or welfare or the environment
. . . .

42 U.S.C. § 9604(a)(1).

20.      Section 106(a) of CERCLA provides, in addition to

the President's authority to undertake response actions under

Section 104 of CERCLA, in relevant part, that:

[W]hen the President determines that there may be an
imminent and substantial endangerment to the public
health or welfare or the environment because of an
actual or threatened release of a hazardous substance
from a facility, he may require the Attorney General of
the United States to secure such relief as may be
necessary to abate such danger or threat, and the
district court of the United States in the district in
which the threat occurs shall have jurisdiction to
grant such relief as the public interest and the
equities of the case may require.

42 U.S.C. § 9606(a).

21.  For CERCLA response actions and enforcement purposes,

the Administrator of EPA is the President's delegate, as provided

in operative Executive Orders, and, within certain limits, the

Regional Administrators of EPA have been re-delegated this

authority.

22.  Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides

in relevant part:

Notwithstanding any other provision or rule

of law, and subject only to the defenses set forth in subsection (b) of this Section—

(1)   the owner and operator of a vessel or a facility, [and]

(2)   any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

. . .

shall be liable for--

(A)   all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan . . . .

### GENERAL AVERMENTS

23.   From about 1940 to 1957, airplane parts manufacturing (especially metal finishing activities such as electroplating and painting) was carried out at the Site, and waste containing hazardous substances were disposed of at the Site.

24.   From about 1957 to 1984, metal plating and fiberglass product manufacturing were carried out at the Site, and waste containing hazardous substances were disposed of at the Site.

25.   Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on June 10, 1986, 51 Fed. Reg. 21054 (1986).

26.   Substances defined as hazardous substances pursuant to Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), have been

-7-

detected at the Site. These substances include, but are not
limited to, chromium, cadmium, and volatile organic compounds,
including cis-1,2 dichloroethene, trichloroethene, and
tetrachloroethene.

27. These hazardous substances have been detected at the
Site in various media at the Site, including but not limited to,
soils; groundwater; sediments; and underground features.

28. In March 2002, EPA issued a Record of Decision ("ROD")
for the Site. The major components of the selected remedy were a
soil remedy including excavation and off-Site disposal of all
soils contaminated above groundwater protection levels; a
groundwater remedy including collection, treatment and off-site
disposal of contaminated ground water; and a sediment remedy
including excavation and off-Site disposal of contaminated
sediments within Pond A of the Massapequa Preserve; and
institutional controls governing the future use of the Site.

29. Pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604,
EPA has taken actions in "response" to releases or threatened
releases of hazardous substances at or from the Site, as defined
in 42 U.S.C. § 9601(25). These response actions have included,
without limitation: performance by EPA of a remedial
investigation and feasibility study for the Site, including the
issuance in 1994 of a remedial investigation report and
feasibility study, the issuance in 2001 of a proposed plan for

-8-

remedial action, and the issuance in 2002 of the Record of
Decision; and oversight by EPA of the performance of work by the
potentially responsible parties at the Site, including a PCB
removal action carried out from 1995 to 1996, a continued
remedial investigation and feasibility study carried out from
1998 to 2001, an interim groundwater remedial action carried out
from 1998 to the present, and a removal action to address
contaminated features on a ten-acre part of the eastern parcel of
the Site carried out from 2002 to the present.

30.   The Site is a "facility" within the meaning of Section
101(9) of CERCLA, 42 U.S.C. § 9601(9).

## DEFENDANTS' STATUS UNDER CERCLA

31.   Coltec and Goodrich, as successors to Liberty Aircraft
Products Corporation ("Liberty Aircraft"), were owners and
operators at the Site between 1940 and 1957.   During this period,
hazardous substances were disposed of at the Site.   Coltec's
predecessor (Liberty Aircraft) sold the property in 1957, but
entered into a 25-year lease-back from the purchaser under which
Liberty Aircraft acted as lessee under the lease-back and
landlord for various subtenants until 1981.   Various of these
subtenants engaged in the disposal of hazardous substances at the
Site.   Accordingly, Coltec and Goodrich were owners and operators
at the time of disposal of hazardous substances within the
meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

-9-

32.   55 Motor Avenue, as successor to 55 Motor Avenue
Company, and Rosmarin have been operators of the Site since 1987.
Accordingly, 55 Motor Avenue and Rosmarin are owners or operators
of a facility within the meaning of Section 107(a)(1) of CERCLA,
42 U.S.C. § 9607(a)(1).

33.   Cubbies and Tanenbaum have been the owners of the Site
since 1986.   Accordingly, Cubbies and Tanenbaum are owners or
operators of a facility within the meaning of Section 107(a)(1)
of CERCLA, 42 U.S.C. § 9607(a)(1).

34.   Rosmarin, Lazarus and Burman were partners in the Four
J's Company.   The Four J's Company purchased the eastern parcel
of the property in 1980 and the western parcel of the property in
1984 and sold the property in 1986.   During periods of Four J's'
ownership, various businesses continued to occupy space at the
property and dispose of hazardous substances at the Site.
Accordingly, Rosmarin, Lazarus and Burman were owners or
operators at the time of disposal of hazardous substances within
the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C.
§ 9607(a)(2).

35.   Liberty Associates owned the property from 1970 to
1984.   William Heller was a general partner in Liberty
Associates.   During the period of 1970 to 1984, manufacturing
operations were conducted at the property, the most significant
of which involved metal plating and fiberglass products

manufacturing.   These operations included the disposal of hazardous substances at the Site.  Accordingly, Liberty Associates and Heller are liable as owners or operators at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

36.   Koch as successor to Fiberglass Resources and its successor companies, carried out fiberglass products manufacturing at the Site from about 1968 to 1984.  This manufacturing involved the disposal of hazardous substances at the Site.  Accordingly, Koch is liable as an operator at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

37.   Beazer, as successor to Lamtex Corp. and its successor companies, carried out fiberglass products manufacturing at the Site from about 1955 to 1969.  This manufacturing involved the disposal of hazardous substances at the Site.  Accordingly, Beazer is liable as an owner or operator at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

38.   There have been and continue to be "releases" of "hazardous substances" within the meaning of Sections 101(22) and (14) of CERCLA, 42 U.S.C. §§ 9601(22) and (14), into the environment at and from the Site.

-11-

## FIRST CLAIM FOR RELIEF

### INJUNCTIVE RELIEF UNDER CERCLA SECTION 106(a)

39.  Paragraphs 1 through 38, inclusive, are reaverred and incorporated herein by reference.

40. In accordance with Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the Regional Administrator of EPA, Region II, has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of the actual and/or threatened releases of hazardous substances at and from the Site.

41. The remedy selected under the ROD is not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

42.  Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the defendants are liable to perform certain response actions selected by EPA in order to abate the conditions at the Site that present or may present an imminent and substantial endangerment to the public health or welfare or the environment.

## SECOND CLAIM FOR RELIEF

### COST RECOVERY UNDER CERCLA SECTION 107(a)

43.  Paragraphs 1 through 42, inclusive, are reaverred and incorporated herein by reference.

44.  The releases or threatened releases of hazardous substances at the Site have caused the United States to incur response costs as defined by Section 101(25) of CERCLA, 42 U.S.C.

-12-

§ 9601(25), in connection with the Site.  The United States will continue to incur response costs in connection with the Site in the future.

45.  The costs of the response actions taken and to be taken by the United States in connection with the Site are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

46.  Pursuant to Section 107(a), 42 U.S.C. § 9607(a), defendants are liable to the United States for the response costs incurred and to be incurred by the United States in connection with the Site.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, the United States of America, respectfully requests that this Court:

1.  On the First Claim for Relief, enter judgment against each of the defendants, jointly and severally, in favor of the United States, ordering the defendants to perform certain response actions selected by EPA in order to abate the conditions at the Site;

2.  On the Second Claim for Relief, enter judgment against each of the defendants, jointly and severally, in favor of the United States, for all past and future response costs incurred or to be incurred by the United States in connection with the Site, including enforcement costs, the cost of any

-13-

of the United States, for all past and future response costs
incurred or to be incurred by the United States in connection
with the Site, including enforcement costs, the cost of any
health assessment or health effects study relevant to the Site,
and interest;

       3. Award the United States its costs of this action;
and

       4. Grant such other and further relief as the Court
deems appropriate.

Respectfully submitted,

*Tom Sansonetti*

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural
  Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York
One Pierrepont Plaza, 14th Fl.
Brooklyn, New York 11201

By: *Sandra Levy*

SANDRA L. LEVY (SL 9874)
Assistant United States Attorney
(718) 254-6014

Of Counsel

MICHAEL MINTZER
Assistant Regional Counsel
U.S. Environmental Protection Agency
290 Broadway
New York, New York  10007-1866

SIR:

PLEASE TAKE NOTICE that the within will be

presented for settlement and signature to the Clerk

of the United States District Court in his office at the

UNITED STATES DISTRICT COURT U.S. Courthouse, 225

Cadman Plaza East, **EASTERN DISTRICT OF NEW YORK**

Brooklyn, New York, on the _____ day of _____

20___, at 10:30 o'clock in the forenoon.

Dated: Brooklyn New York, _____, 20__

United States Attorney,

Attorney for _____

To: _____

Attorney for _____

SIR:

PLEASE TAKE NOTICE that the within is a

true copy of _____ duly entered herein

on the _____ day of _____

_____ in the office of the Clerk of

the Eastern District of New York,

Dated: Brooklyn, New York

_____, 20__

United States Attorney,

Attorney for _____

To: _____

Attorney for _____

---

Civil Action          No.

UNITED STATES DISTRICT COURT
Eastern District of New York

_____

UNITED STATES OF AMERICA,

Plaintiff,

-against-

COLTEC INDUSTRIES, INC.;
GOODRICH CORPORATION;
55 MOTOR AVENUE LLC;
CUBBIES PROPERTIES, INC.;
JEFRY ROSMARIN;
J. JAY TANENBAUM;
JAN BURMAN;
JEROME LAZARUS;
LIBERTY ASSOCIATES;
WILLIAM HELLER;
KOCH-GLITSCH, LP;
BEAZEREBAST, INC.,

Defendants.

---

**Complaint**

---

ROSLYNN R. MAUSKOPF

United States Attorney,
Attorney for Defendant,
Office and Post Office Address,
United States Courthouse
One Pierrepont Plaza
Brooklyn, New York 11201

---

Due service of a copy of the within _____
is hereby admitted.

Dated: _____, 20__

_____

Attorney for Defendant _____

---

SANDRA L. LEVY, AUSA
718-254-6014

Attorney for Defendant