UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

                Plaintiff,

     - against -

COLTEC INDUSTRIES, INC.;
GOODRICH CORPORATION;
55 MOTOR AVENUE LLC;
CUBBIES PROPERTIES, INC.;
JEFRY ROSMARIN;
J. JAY TANENBAUM;
JAN BURMAN;
JEROME LAZARUS;
LIBERTY ASSOCIATES;
WILLIAM HELLER;
KOCH-GLITSCH, LP;
BEAZEREAST, INC.,

          Defendants.

- - - - - - - - - - - - - - - - - X

**CONSENT JUDGMENT**

Civil Action
No. CV-04-1308

(Garaufis, J.)
(Levy, M.J.)

ORIGINAL
FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ AUG 3 1 2004 ★

BROOKLYN OFFICE

MOVANT'S COUNSEL IS DIRECTED
TO SERVE A COPY OF THIS ORDER
ON ALL PARTIES UPON RECEIPT

TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II. JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
III. PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
IV. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
V. GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
VI. PERFORMANCE OF THE WORK BY SETTLING WORK DEFENDANTS . . . . . . . . . . . . . . . . . . 9
VII. REMEDY REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . . . . . . . . . . . . . 12
IX. ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
X. REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . 18
XII. PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
XIII. ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
XIV. CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
XV. EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
XVI. PAYMENTS FOR RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
XVII. INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
XVIII. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
XIX. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
XX. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
XXI. COVENANTS BY PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
XXII. COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES . . . . . . . 38
XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . . . . . . 40
XXIV. ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
XXV. RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
XXVI. NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
XXVII. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
XXVIII. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
XXIX. APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
XXX. COMMUNITY RELATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
XXXI. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . . . 46
XXXIII. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
XXXIV. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

# I. Background

A.     The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.     The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred and to be incurred by EPA and the Department of Justice for response actions at the Liberty Industrial Finishing Superfund Site (the "Site") in the Village of Farmingdale, Town of Oyster Bay, Nassau County, New York, together with accrued interest; and (2) performance of studies and response work by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.     In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of New York (the "State") on September 23, 2002 of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Judgment.

D.     In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the U.S. Department of the Interior ("DOI") and the National Oceanic and Atmospheric Administration ("NOAA") on September 23, 2002 of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Judgment.

E.     The defendants that have entered into this Consent Judgment ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment. The Settling Federal Agencies do not admit any liability arising out of the transactions or occurrences alleged in any claim asserted by the Settling Defendants.

F.     Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on June 10, 1986, 51 Fed. Reg. 21054 (1986).

G.     In response to a release or a substantial threat of a release of hazardous substances at or from the Site, in November, 1991, EPA commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430, and in January 1997 a group consisting of some of the Settling Defendants (the "CRI/FS Respondents") commenced a "continued RI/FS" for the Site pursuant to 40 C.F.R. § 300.430.

H.     The CRI/FS Respondents completed a Remedial Investigation ("RI") Report on July 20, 2000, and the CRI/FS Respondents completed a Feasibility Study ("FS") Report on July 26, 2000.

I.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on July 23, 2001, in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

J.     The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on March 28, 2002, on which the State has given its concurrence.  The ROD includes EPA's explanation for any significant differences between the final plan and the proposed plan as well as a responsiveness summary to the public comments.  Notice of the final plan was published on October 17, 2002 in accordance with Section 117(b) of CERCLA.

K.     Based on the information presently available to EPA, EPA believes that the Work (as defined below) will be properly and promptly conducted by the Settling Work Defendants if conducted in accordance with the requirements of this Consent Judgment.

L.     The remedial action selected in the ROD addresses, among other things, soil contamination at the Site.  For purposes of this Consent Judgment, EPA has determined that the Town of Oyster Bay has acquired, or will, within a reasonable time frame, acquire the western part of the 30-acre portion of the Site for parkland purposes and that the applicable remedial action with respect to soils at the Site thus is the alternative denominated as SL-3 in the ROD.

M.     The Settling Work Defendants have established the Liberty Industrial Finishing Site Trust Account to receive certain settlement and other payments with respect to the Site from certain of the Settling Defendants, the Settling Federal Agencies, and third parties.  Payments to the Liberty Industrial Finishing Site Trust Account shall only be used to fund the Work, the Features Tasks and/or to pay Future Response Costs.

N.     Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Work Defendants shall constitute a response action taken or ordered by the President.

O.     The Parties recognize, and the Court by entering this Consent Judgment finds, that this Consent Judgment has been negotiated by the Parties in good faith and implementation of this Consent Judgment will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Judgment is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:


## II. JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendants.  Solely for the purposes of this Consent Judgment and the underlying complaint, Settling Defendants waive all objections and defenses

that they may have to jurisdiction of the Court or to venue in this District and all defenses based on statute of limitations.  Settling Defendants shall not challenge the terms of this Consent Judgment or this Court's jurisdiction to enter and enforce this Consent Judgment.

## III. PARTIES BOUND

2.      This Consent Judgment applies to and is binding upon the United States and upon Settling Defendants and their heirs, successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Judgment.

3.      Settling Work Defendants shall provide a copy of this Consent Judgment to each contractor hired to perform the Work required by this Consent Judgment and to each person representing any Settling Work  Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Judgment.  Settling Work  Defendants or their contractors shall provide written notice of the Consent Judgment to all subcontractors hired to perform any portion of the Work required by this Consent Judgment.  Settling Work Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Judgment.  With regard to the activities undertaken pursuant to this Consent Judgment, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Work Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided herein, terms used in this Consent Judgment which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Judgment, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Judgment" shall mean this Consent Judgment and all appendices attached hereto (listed in Section XXIX).  In the event of conflict between this Consent Judgment and any appendix, this Consent Judgment shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day.  "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Judgment, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Judgment as provided in Paragraph 112.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Features AOC" shall mean the administrative order on consent (Index number CERCLA-02-2002-2013) issued by EPA on March 27, 2002, pursuant to Section 106(a) of CERCLA, to 55 Motor Avenue Company; Cubbies Properties, Inc.; Jefry Rosmarin; and J. Jay Tanenbaum, current owners and operators of real property included within the Site, requiring the investigation and remediation of certain storage tanks, subsurface features, sanitary leaching fields and an approximately 500 cubic yard mound of contaminated soils located at such real property.

"Features Tasks" shall mean any or all of the work and other obligations required to be performed by the respondents under the Features AOC.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Judgment, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Judgment, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 92 of Section XXI.  Future Response Costs shall also include all Interim Response Costs.

"Interim Groundwater Tasks" shall mean any or all of the work and other obligations required to be performed by the respondents under the Interim Groundwater UAO.

"Interim Groundwater UAO" shall mean the unilateral administrative order (Index number II CERCLA-98-0208) issued by EPA on August 3, 1998, pursuant to Section 106(a) of CERCLA, to certain of the Settling Defendants, requiring the remediation of groundwater underlying the 30-acre portion of the Site.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between March 10, 2002 (as to payroll costs) or March 19, 2002 (as to all other costs) and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Judgment.

"Owner Settling Defendants" shall mean the Settling Defendants listed in Appendix E.

4

"Paragraph" shall mean a portion of this Consent Judgment identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the Section of the ROD entitled "Remedial Action Objectives," the "Compliance with ARARs" subsection of the "Selected Remedy" section of the ROD, and Section II of the Statement of Work ("SOW"), as defined below.

"Plaintiff" shall mean the United States.

"Plume B" shall mean those hazardous substances and/or pollutants and contaminants, including tetrachloroethylene, released and threatened to be released into groundwater, from a source or sources located entirely or primarily about one-quarter mile north of the 30-acre portion of the Site, and also includes all areas of groundwater where hazardous substances and/or pollutants or contaminants released from that source or sources come to be located, the extent of which, as of 1999, is depicted generally on the map attached as Appendix H, but Plume B does not include that portion of the groundwater plume originating north of the Site which is commingled with hazardous substances and/or pollutants and contaminants released at or from the 30-acre portion of the Site.

"Prospective Purchaser Agreement" shall mean the Agreement and Covenant Not to Sue, Index Number CERCLA-02-2002-2019, entered into by EPA and the Town of Oyster Bay which became effective on June 10, 2003.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on March 28, 2002, by the Regional Administrator, EPA Region II, or his/her delegate, and all attachments thereto. The ROD (excluding appendices) is attached as Appendix A.

"Remedial Action" shall mean those activities, including Operation and Maintenance, to be undertaken by the Settling Work Defendants to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the work plan or work plans developed pursuant to Section X of the SOW and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Work Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the work plan developed pursuant to Sections VI and VII of the SOW and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Judgment identified by a Roman numeral.

"Settling Defendants" shall mean those Parties identified in Appendices D (Non-Owner Settling Defendants) and E (Owner Settling Defendants) but shall not include the Settling Federal Agencies.

"Settling Federal Agencies" shall mean those departments, agencies, and instrumentalities of the United States identified in Appendix F, which are resolving any claims which have been or could be asserted against them with regard to this Site as provided in this Consent Judgment.

"Settling Work Defendants" shall mean those Parties identified in Appendices D (Non-Owner Settling Defendants) and E (Owner Settling Defendants) other than BeazerEast, Inc. and Koch-Glitsch, LP.

"Site" shall mean the Liberty Industrial Finishing Superfund Site, located in the unincorporated Village of Farmingdale, Town of Oyster Bay, Nassau County, New York, encompassing an area approximately 30 acres in size, which is located at 55 Motor Avenue and designated on the Nassau County tax map as Lots 327 and 329 of Block 518, Section 48, depicted generally on the map attached as Appendix C, as well as those areas where hazardous substances and/or pollutants and contaminants released at or from the 30-acre area have come to be located, but, for purposes of this Consent Judgment, the Site does not include Plume B.

"State" shall mean the State of New York.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix B of this Consent Judgment and any modifications made in accordance with this Consent Judgment.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Work Defendants to supervise and direct the implementation of the Work under this Consent Judgment.

"United States" shall mean the United States of America, including all of its departments, agencies, and instrumentalities, which includes without limitation EPA, the Settling Federal Agencies and any federal natural resource trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities Settling Work Defendants are required to perform under this Consent Judgment, except those required by Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

5.      Objectives of the Parties. The objectives of the Parties in entering into this Consent Judgment are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Settling Work Defendants, to reimburse response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants and the claims of the Settling Defendants which have been or could have been

asserted against the United States with regard to this Site as provided in this Consent Judgment and to resolve the contribution claims among the Settling Defendants and Settling Federal Agencies.

6.     Commitments by Settling Defendants and Settling Federal Agencies.

a.     Settling Work Defendants shall finance and perform the Work in accordance with this Consent Judgment, the ROD, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Work Defendants and approved by EPA pursuant to this Consent Judgment. Settling Work Defendants shall also reimburse the United States for Future Response Costs as provided in this Consent Judgment. Settling Federal Agencies shall pay a share of the costs of the Work, the Features Tasks, and Future Response Costs through periodic contributions to the Liberty Industrial Finishing Site Trust Account, as provided pursuant to Paragraph 58.b of this Consent Judgment.

b.     BeazerEast, Inc. and Koch-Glitsch, LP.  BeazerEast, Inc. and Koch-Glitsch, LP are jointly and severally obligated to make the payment required of them under Paragraph 60 of this Consent Judgment.

7.     Joint and Several Liability.  The obligations of Settling Work Defendants to finance and perform the Work and to pay amounts owed to the United States under this Consent Judgment are joint and several.  In the event of the insolvency or other failure of any one or more Settling Work Defendants to implement the requirements of this Consent Judgment, the remaining Settling Work Defendants shall fully comply with all such requirements.

8.     Compliance With Applicable Law.  All activities undertaken by Settling Work Defendants pursuant to this Consent Judgment shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Work Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Judgment, if approved by EPA, shall be considered to be consistent with the NCP.

9.     Permits.

a.     As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Work Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.     The Settling Work Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Judgment for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.     This Consent Judgment is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

10.    Notice to Successors-in-Title.

a.    With respect to any property owned or controlled by the Owner Settling Defendants that is located within the Site, within 15 days after the entry of this Consent Judgment, the Owner Settling Defendants shall submit to EPA for review and approval a notice to be filed with the Registry of Deeds, Nassau County, State of New York, which shall provide notice to all successors-in-title that the property is part of the Site, that EPA selected a remedy for the Site on March 28, 2002, and that potentially responsible parties have entered into a Consent Judgment requiring implementation of the remedy.  Such notice shall identify the United States District Court in which the Consent Judgment was filed, the name and civil action number of this case, and the date the Consent Judgment was entered by the Court.  The Owner Settling Defendants shall record the notice within 10 days of EPA's approval of the notice.  The Owner Settling Defendants shall provide EPA with a certified copy of the recorded notice within 10 days of recording such notice.

b.    At least 30 days prior to the conveyance of any interest in property located within the Site including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Owner Settling Defendant(s) conveying the interest shall give the grantee written notice of (i) this Consent Judgment, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the Site (hereinafter referred to as "access easements") pursuant to Section IX (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section IX (Access and Institutional Controls).  At least 30 days prior to such conveyance, the Owner Settling Defendant(s) conveying the interest shall also give written notice to EPA of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Judgment, access easements, and/or restrictive easements was given to the grantee.

c.    In the event of any such conveyance, the Owner Settling Defendants' obligations under this Consent Judgment, including, but not limited to, their obligation to provide or secure access and institutional controls, as well as to abide by such institutional controls, pursuant to Section IX (Access and Institutional Controls) of this Consent Judgment, shall continue to be met by the Owner Settling Defendants.  In no event shall the conveyance release or otherwise affect the liability of the Owner Settling Defendants to comply with all provisions of this Consent Judgment, absent the prior written consent of EPA.  If the United States approves, the grantee may perform some or all of the Work under this Consent Judgment.

11.    Dismissal of Pending Claims.  Within thirty (30) days following the Effective Date, the United States and the Settling Defendants who are parties to the action captioned 55 Motor Avenue Co., et al. v. Liberty Industrial Finishing Corp., et al., Civil Action No. CV-91-0968, which is pending in the United States District Court for the Eastern District of New York, shall submit to the Court for approval a stipulation (1) dismissing the action with prejudice, with the exception of Coltec's cross-claim against Liberty Aero, Inc. and any cross-claims or counterclaims against Grumman Corporation, (2) preserving for all parties claims relating to any

8

issue that is excepted from Plaintiff's covenant not to sue or take administrative action pursuant to paragraphs 88, 89 and 91 of this Consent Judgment, and (3) with each party bearing its own costs, expenses and attorneys' fees.

## VI. PERFORMANCE OF THE WORK BY SETTLING WORK DEFENDANTS

12.     Selection of Supervising Contractor.

a.       All aspects of the Work to be performed by Settling Work Defendants pursuant to Sections VI (Performance of the Work by Settling Work Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Judgment shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA. Settling Work Defendants' Supervising Contractor, as well as all other contractors and subcontractors who engage in the "practice of engineering" at the Site on behalf of Settling Work Defendants, as the "practice of engineering" is defined at Section 7201 of the New York State Education Law, must comply with all applicable New York State legal requirements regarding the practice of professional engineering within the State of New York, including, but not limited to, all applicable requirements of the New York State Education Law and Articles 15 and 15-A of the Business Corporation Law. Within 15 days after the lodging of this Consent Judgment, Settling Work Defendants shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. With respect to any contractor proposed to be Supervising Contractor, Settling Work Defendants shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Work Defendants propose to change a Supervising Contractor, Settling Work Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Judgment.

b.       If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Work Defendants in writing. Settling Work Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Work Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.       If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Work Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent

9

Judgment, Settling Work Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

13.    Remedial Design/Remedial Action.

Settling Work Defendants shall fully implement and comply with the SOW.  The Work to be performed by Settling Work Defendants pursuant to this Consent Judgment shall, at a minimum, achieve the Performance Standards and all other requirements of, and be performed in a manner consistent with, the ROD and this Consent Judgment.

14.    Continued Implementation of Work.

Settling Work Defendants shall continue to implement the various components of the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Judgment.

15.    Modification of the SOW or Related Work Plans.

a.    If EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

b.    For the purposes of this Paragraph 15 and Paragraphs 52 and 53 only, the "scope of the remedy selected in the ROD," in summary, is:

(I) as to soils: (A)  excavation and off-Site disposal of all soils contaminated above the soil Performance Standards; (B) subsequent to excavation of such soils, placement of clean fill in the excavated areas; (C) removal of contaminated aqueous and/or solid materials from underground storage tanks and other subsurface features at the Site; and (D) implementation of institutional controls to restrict the use of the Site to commercial/industrial uses or, where applicable, to recreational uses;

(II) as to groundwater: (A) continued operation of the groundwater treatment system installed pursuant to the Interim Groundwater UAO, to address the groundwater underlying the 30-acre portion of the Site, other than Plume B, in order to reduce contaminant levels so as to achieve Performance Standards and restore the aquifer; (B) construction and operation of a conventional pump-and-treat system to treat groundwater contamination downgradient of the 30-acre portion of the Site, other than Plume B, in order to reduce contaminant levels so as to achieve Performance Standards and restore the aquifer; (C) discharge of treated groundwater to Massapequa Creek surface water or reinjection of treated groundwater into the aquifer; (D) implementation of a groundwater monitoring program; and (E) implementation of institutional controls to prohibit installation or use of groundwater wells for human consumption of the well water or any other purpose which would or could result in human contact with groundwater; and

(III) as to the Massapequa Preserve:  (A) removal by excavation or vacuum extraction and off-Site disposal of sediments contaminated above Performance

Standards within Pond A of the Massapequa Preserve; and (B) implementation of a monitoring program for the remainder of the ponds within the Massapequa Preserve.

c.    If Settling Work Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 71 (record review). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.    Settling Work Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e.    Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Judgment.

16.    Settling Work Defendants acknowledge and agree that nothing in this Consent Judgment or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

17.    a.    Settling Work Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1)    The Settling Work Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Work Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)    The identity of the receiving facility and state will be determined by the Settling Work Defendants following the award of the contract for Remedial Action construction. The Settling Work Defendants shall provide the information required by Paragraph 17.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.    Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Work Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. Settling Work Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. REMEDY REVIEW

18.     Periodic Review.  Settling Work Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews, at least every five years, of whether the Remedial Action is protective of human health and the environment, as required by Section 121(c) of CERCLA and any applicable regulations.

19.     EPA Selection of Further Response Actions.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

20.     Opportunity To Comment.  Settling Work Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

21.     Settling Work Defendants' Obligation To Perform Further Response Actions.  If EPA selects further response actions for the Site, the Settling Work Defendants shall undertake such  further response actions to the extent that the reopener conditions in Paragraph 88 or Paragraph 89 (United States' reservations of liability based on unknown conditions or new information) are satisfied.  Settling Work Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 88 or Paragraph 89 of Section XXI (Covenants by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions.  Disputes pertaining to the whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 71 (record review).

22.     Submissions of Plans.  If Settling Work Defendants are required to perform the further response actions pursuant to Paragraph 21, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Work Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Consent Judgment.

## VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

23.     Settling Work Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Work Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.  Prior to the commencement of any monitoring project under this Consent Judgment, Settling Work Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable

guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Judgment. Settling Work Defendants shall ensure that EPA and State personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Work Defendants in implementing this Consent Judgment. In addition, Settling Work Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Work Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Consent Judgment perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" (Revision No. 11, 1992) and the "Contract Lab Program Statement of Work for Organic Analysis," (Revision No. 9, 1994), and any amendments made thereto during the course of the implementation of this Consent Judgment; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Work Defendants may use other analytical methods which are as stringent as or more stringent than the CLP- approved methods. Settling Work Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Judgment participate in an EPA or EPA-equivalent QA/QC program. Settling Work Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. Settling Work Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Judgment will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

24.   Upon request, the Settling Work Defendants shall allow split or duplicate samples to be taken by EPA or its authorized representatives. Settling Work Defendants shall notify EPA not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow the Settling Work Defendants to take split or duplicate samples of any samples it takes as part of its oversight of the Settling Work Defendants' implementation of the Work.

25.   Settling Work Defendants shall submit to each of EPA and the State five copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Work Defendants with respect to the Site and/or the implementation of this Consent Judgment unless EPA agrees otherwise.

26.   Notwithstanding any provision of this Consent Judgment, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

27.     To the extent that the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Judgment, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

a.     commencing on the date of lodging of this Consent Judgment, provide the United States and its representatives, including EPA and its contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Judgment including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States;

(3)     Conducting investigations relating to contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 92 of this Consent Judgment;

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)     Assessing Settling Work Defendants' compliance with this Consent Judgment; and

(10)    Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Judgment;

b.     commencing on the date of lodging of this Consent Judgment, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Judgment.  Such restrictions include, but are not limited to: (i) the prohibition of any use of the Site for residential purposes, and (ii) the prohibition of the installation or use of groundwater wells at the Site for purposes of human consumption of the well water or for any other purpose which would or could result in human contact with groundwater; and

14

       c.     execute and record in the Registry of Deeds, Nassau County, State of New York, an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Judgment including, but not limited to, those activities listed in Paragraph 27.a of this Consent Judgment, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 27.b of this Consent Judgment, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Judgment. Such Settling Defendants shall grant the access rights and the rights to enforce the land/water use restrictions to one or more of the following persons as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the other Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Such Settling Defendants shall, within 45 days of entry of this Consent Judgment, submit to EPA for review and approval with respect to such property:

       (1)     A draft easement, in substantially the form attached hereto as Appendix G, that is enforceable under the laws of the State of New York, and

       (2)     a current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, such Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the easement with the Registry of Deeds, Nassau County, State of New York. Within 30 days of recording the easement, such Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

       28.     If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Judgment, is owned or controlled by persons other than any of the Settling Defendants, Settling Work Defendants shall, if EPA so requests, use best efforts to secure from such persons:

       a.     an agreement to provide access thereto for Settling Work Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Judgment including, but not limited to, those activities listed in Paragraph 27.a of this Consent Judgment;

       b.     an agreement, enforceable by the Settling Work Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial

measures to be performed pursuant to this Consent Judgment. Such restrictions include, but are not limited to those restrictions listed in Paragraph 27.b of this Consent Judgment; and

     c.  the execution and recordation in the Registry of Deeds, Nassau County, State of New York, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Judgment including, but not limited to, those activities listed in Paragraph 27.a of this Consent Judgment, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 27.b of this Consent Judgment, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Judgment. The access rights and/or rights to enforce land/water use restrictions shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Work Defendants and their representatives, and/or (iv) other appropriate grantees. Within 45 days of EPA's request, Settling Work Defendants shall submit to EPA for review and approval with respect to such property:

     (1)  A draft easement, in substantially the form attached hereto as Appendix G, that is enforceable under the laws of the State of New York, and

     (2)  a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Work Defendants are unable to obtain release or subordination of such prior liens or encumbrances)

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Work Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with the Registry of Deeds, Nassau County, State of New York . Within 30 days of the recording of the easement, Settling Work Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

  29.  For purposes of Paragraphs 27 and 28 of this Consent Judgment, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance except that "best efforts" shall not require the payment of money to the Town of Oyster Bay in connection with portions of the Site owned by the Town. If (a) any access or land/water use restriction agreements required by Paragraphs 28.a  or 28.b of this Consent Judgment are not obtained within 45 days of the date of entry of this Consent Judgment, (b) or any access easements or restrictive easements required by Paragraph 28.c of this Consent Judgment are not submitted to EPA in draft form within 45 days of EPA's request therefor, or (c) Settling Defendants are unable to obtain an agreement pursuant to Paragraph 27.c.(2) or

Paragraph 28.c.(2) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this Consent Judgment within 45 days of the date of entry of this Consent Judgment, the Settling Defendants subject to Paragraph 27, or Settling Work Defendants, as the case may be, shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that such Settling Defendants have taken to attempt to comply with Paragraph 27 or 28 of this Consent Judgment. The United States may, as it deems appropriate, assist such Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance.  Such Settling Defendants shall reimburse the United States in accordance with the procedures in Section XVI (Payments for Response Costs),  for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

30.     If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's efforts to secure such governmental controls.

31.     Notwithstanding any provision of this Consent Judgment, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

32.     In addition to any other requirement of this Consent Judgment, Settling Work Defendants shall submit to EPA and the State written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Judgment during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Work Defendants or their contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this Consent Judgment completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Work Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of EPA's Community Relations Plan for the Site during the previous month and those to be undertaken in the next six weeks.  Settling Work Defendants shall submit these progress reports to EPA and the State by the tenth day of every month following the lodging of this Consent Judgment until EPA notifies the Settling Work Defendants pursuant to Paragraph 53.b of Section XIV (Certification

of Completion).  If requested by EPA, Settling Work Defendants shall also provide briefings for EPA to discuss the progress of the Work.

33.     The Settling Work Defendants shall notify EPA of any change in the schedule described in a monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

34.     Upon the occurrence of any event during performance of the Work that Settling Work Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Work Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Chief of the New York Remediation Branch of the Emergency and Remedial Response Division, EPA Region II.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

35.     Within 20 days of the onset of such an event, Settling Work Defendants shall furnish to EPA a written report, signed by the Settling Work Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto.  Within 30 days of the conclusion of such an event, Settling Work Defendants shall submit a report setting forth all actions taken in response thereto.

36.     Settling Work Defendants shall submit to EPA five copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans, in accordance with the schedules set forth in such plans. Settling Work Defendants shall simultaneously submit five copies of all such plans, reports and data to the State.  Upon request by EPA, Settling Work Defendants shall also submit in electronic form all portions of any report or other deliverable Settling Work Defendants are required to submit pursuant to the provisions of this Consent Judgment.

37.     All reports and other documents submitted by Settling Work Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Work Defendants' compliance with the terms of this Consent Judgment shall be signed by an authorized representative of the Settling Work Defendants.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

38.     After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Judgment, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Work Defendants modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Work Defendants at least one notice of deficiency and an opportunity to cure within 14 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and

18

the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

39.      In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 38.a, b, or c, Settling Work Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 38.c and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

40.      <u>Resubmission of Plans</u>.

a.      Upon receipt of a notice of disapproval pursuant to Paragraph 38.d, Settling Work Defendants shall, within 14 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 14-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 41 and 42.

b.      Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 38.d, Settling Work Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve Settling Work Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

41.      In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Work Defendants to correct the deficiencies, in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the plan, report or other item.  Settling Work Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

42.      If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Work Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Work Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution.  If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

43.      All plans, reports, and other items required to be submitted to EPA under this Consent Judgment shall, upon approval or modification by EPA, be enforceable under this Consent Judgment.  In the event EPA approves or modifies a portion of a plan, report, or other

item required to be submitted to EPA under this Consent Judgment, the approved or modified portion shall be enforceable under this Consent Judgment.

## XII. PROJECT COORDINATORS

44.     Within 20 days of lodging this Consent Judgment, Settling Work Defendants and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Work Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Work Defendants' Project Coordinator shall not be an attorney for any of the Settling Work Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

45.     EPA may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Judgment. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the NCP, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Judgment and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

46.     Settling Work Defendants' Project Coordinator shall be available to meet with EPA, at EPA's request.

## XIII. ASSURANCE OF ABILITY TO COMPLETE WORK

47.     Within 30 days of entry of this Consent Judgment, Settling Work Defendants shall establish and maintain financial security in the amount of $31,767,000 in one or more of the following forms:

a.     A surety bond guaranteeing performance of the Work;

b.     One or more irrevocable letters of credit equaling the total estimated cost of the Work;

c.     A trust fund established to fund the Work at the Site substantially meeting the requirements of a trust fund described at 40 C.F.R. Sections 264.145 and 264.151(a)(1);

d.     A guarantee to perform the Work by one or more parent corporations or subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with at least one of the Settling Work Defendants and that satisfies the requirements of 40 C.F.R. Section 264.143(f); or

e.      A demonstration that one or more of the Settling Work Defendants satisfy the requirements of 40 C.F.R. Section 264.143(f). For these purposes, (i) references in 40 C.F.R. Section 264.143(f) to "the sum of the current closure and post closure cost estimates and the current plugging and abandonment cost estimates" shall mean the amount of financial security required to be established and maintained pursuant to this Section, and (ii) the demonstration by one or more of such Settling Work Defendants may be made by submission to EPA of current financial statements certified by the independent certified public accountant(s) for the relevant Settling Work Defendant(s), together with a written explanation of how the provisions of this subparagraph have been satisfied.

48.      If the Settling Work Defendants seek to demonstrate the ability to complete the Work through a guarantee by a third party pursuant to Paragraph 47.d of this Consent Judgment, Settling Work Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part 264.143(f) applied in accordance with Paragraph 47.e. If Settling Work Defendants seek to demonstrate their ability to complete the Work by means of the financial test or the corporate guarantee pursuant to Paragraph 47.d or 47.e, they shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the anniversary of the Effective Date. In the event that EPA determines at any time that the financial assurances provided pursuant to this Section are inadequate, Settling Work Defendants shall, within 30 days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of the other forms of financial assurance listed in Paragraph 47 of this Consent Judgment. Settling Work Defendants' inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Judgment.

49.      If Settling Work Defendants can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 47 above after entry of this Consent Judgment, Settling Work Defendants may, on any anniversary date of entry of this Consent Judgment, or at any other time agreed to by the Parties, reduce the amount of the financial security provided under this Section to the estimated cost of the remaining work to be performed. Settling Work Defendants shall submit a proposal for such reduction to EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by EPA. In the event of a dispute, Settling Work Defendants may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

50.      Settling Work Defendants may change the form of financial assurance provided under this Section at any time, upon notice to and approval by EPA, provided that the new form of assurance meets the requirements of this Section. In the event of a dispute, Settling Work Defendants may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

51.      EPA will cause to be discharged and released of record, the lien perfected by EPA in July 1996 pursuant to Section 107(l) of CERCLA, 42 U.S.C. 9607(l), on the real property situated within the Site and owned by Owner Settling Defendants, if EPA has been requested to do so in a writing signed on behalf of Coltec Industries, Inc. on the basis that Owner Settling Defendants have provided to Coltec Industries, Inc. satisfactory assurances of the ability of the Owner Settling Defendants to satisfy their financial obligations with respect to this Consent

Judgment as provided by separate agreement between Owner Settling Defendants and Coltec Industries, Inc.

## XIV. CERTIFICATION OF COMPLETION

52.     Completion of the Remedial Action.

a.     Within 90 days after Settling Work Defendants conclude that the Remedial Action has been fully performed and the Performance Standards have been attained, Settling Work Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Work Defendants and EPA. If, after the pre-certification inspection, the Settling Work Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been attained, they shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to Section XI (EPA Approval of Plans and Other Submissions) within 30 days of the inspection. In the report, a registered professional engineer and the Settling Work Defendants' Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Judgment. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of a Settling Work Defendant or the Settling Work Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Judgment or that the Performance Standards have not been achieved, EPA will notify Settling Work Defendants in writing of the activities that must be undertaken by Settling Work Defendants pursuant to this Consent Judgment to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Work Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 15.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Judgment or require the Settling Work Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Work Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Judgment

22

and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Work Defendants. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Judgment, including, but not limited to, Section XXI (Covenants by Plaintiff). Certification of Completion of the Remedial Action shall not affect Settling Work Defendants' obligations under this Consent Judgment.

53.    <u>Completion of the Work</u>.

a.    Within 90 days after Settling Work Defendants conclude that all phases of the Work have been fully performed, Settling Work Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Work Defendants and EPA. If, after the pre-certification inspection, the Settling Work Defendants still believe that the Work has been fully performed, Settling Work Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Judgment. The report shall contain the following statement, signed by a responsible corporate official of a Settling Work Defendant or the Settling Work Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Judgment, EPA will notify Settling Work Defendants in writing of the activities that must be undertaken by Settling Work Defendants pursuant to this Consent Judgment to complete the Work, provided, however, that EPA may only require Settling Work Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 15.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Judgment or require the Settling Work Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Work Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.    If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Work Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Judgment, EPA will so notify the Settling Work Defendants in writing.

## XV. EMERGENCY RESPONSE

54.    In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the

environment, Settling Work Defendants shall, subject to Paragraph 55, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.  If neither of these persons is available, the Settling Work Defendants shall notify the Chief of the Response and Prevention Branch of the Emergency and Remedial Response Division of EPA, Region II, at (732) 321-6656, or, if such person or his/her delegee is unavailable, the EPA Region II Emergency 24-hour Hot Line at (732) 548-8730. Settling Work Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW.  In the event that Settling Work Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Work Defendants shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

55.    Nothing in the preceding Paragraph or in this Consent Judgment shall be deemed to limit any authority of the United States a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants by Plaintiff).

## XVI. PAYMENTS FOR RESPONSE COSTS

56.    Payments for Future Response Costs.

a.    Settling Work Defendants shall pay to EPA all Future Response Costs not inconsistent with the NCP, provided, however, that if EPA receives payments in excess of $1,000,000 from the Town of Oyster Bay pursuant to Paragraph 18 of the Prospective Purchaser Agreement, then the amount of Future Response Costs required to be paid by Settling Work Defendants under this Paragraph 56.a shall be reduced by forty percent (40%) of the amount, if any, in excess of $1,000,000 paid to EPA under Paragraph 18 of the Prospective Purchaser Agreement.  On a periodic basis the United States will send Settling Work Defendants billings for such costs.  The billings will be accompanied by a printout of cost data in EPA's financial management system and, to the extent applicable, in DOJ's financial management system. Settling Work Defendants shall make all payments within 45 days of Settling Work Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 57. Notwithstanding the foregoing, Settling Work Defendants shall not be obligated to make payment for Future Response Costs until the amounts payable to EPA pursuant to Paragraph 18 of the Prospective Purchaser Agreement have been determined by EPA.  To the extent that Future Response Costs are not yet due, the United States may, in lieu of a billing, periodically send to the Settling Work Defendants a cost summary accompanied by a printout of cost data in EPA's financial management system and, to the extent applicable, in DOJ's financial management system setting forth the amount of Future Response Costs that were paid in that period, followed by a billing once the amounts payable to EPA pursuant to Paragraph 18 of the Prospective Purchaser Agreement have been determined by EPA.  Settling Work Defendants

24

shall pay Interest on Future Response Costs from the earlier of the date of the billing or the date
that the cost summary is sent to Settling Work Defendants, until the date of their payment.
Settling Work Defendants shall make all payments under this Paragraph via electronic funds
transfer ("EFT"). Payment shall be remitted via EFT to Mellon Bank, Pittsburgh, Pennsylvania,
and Settling Work Defendants shall provide the following information to their bank:

- Amount of payment

- Title of Mellon Bank account to receive the payment: **EPA**

- Account code for Mellon Bank account receiving the payment: **9108544**

- Mellon Bank ABA Routing Number: **043000261**

- Name of paying Settling Work Defendants

- Case number: **[INSERT INFORMATION]**

- Site/spill identifier: **02T3**

      b.    At the time of payment, Settling Work Defendants shall send notice that
payment has been made to the United States in accordance with Section XXVI (Notices and
Submissions) and to the Comptroller, Financial Management Branch, U.S. Environmental
Protection Agency, Region II, 290 Broadway, New York, NY 10007-1866.

      c.    The total amount to be paid by Setting Work Defendants pursuant to
Subparagraph 56.a shall be deposited in the Liberty Industrial Finishing Site Special Account
within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance
response actions at or in connection with the Site, or to be transferred by EPA to the EPA
Hazardous Substance Superfund.

      57.    Settling Work Defendants may contest payment of any Future Response Costs
under Paragraph 56 if they determine that the United States has made a mathematical error or if
they allege that a cost item that is included represents costs that are inconsistent with the NCP.
Such objection shall be made in writing within 30 days of receipt of the bill or the cost summary
provided pursuant to Paragraph 56.a, whichever is earlier, must be sent to the United States
pursuant to Section XXVI (Notices and Submissions), and shall initiate the Dispute Resolution
procedures in Section XIX (Dispute Resolution). Any such objection shall specifically identify
the contested Future Response Costs and the basis for objection. In the event of an objection to
costs that are the subject of a bill, the Settling Work Defendants shall, within the 45-day period
referred to in Paragraph 56.a, pay all uncontested Future Response Costs to the United States in
the manner described in Paragraph 56. Simultaneously, the Settling Work Defendants shall
establish an interest-bearing escrow account in a federally-insured bank duly chartered in the
State of New York and remit to that escrow account funds equivalent to the amount of the
contested Future Response Costs. The Settling Work Defendants shall send to the United States,
as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and
check paying the uncontested Future Response Costs, and a copy of the correspondence that
establishes and funds the escrow account, including, but not limited to, information containing
the identity of the bank and bank account under which the escrow account is established as well
as a bank statement showing the initial balance of the escrow account. In the case of a dispute

concerning a bill for Future Response Costs, if the United States prevails in the dispute, then within 14 days of the resolution of the dispute, the Settling Work Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 56. In the case of a dispute concerning a cost summary sent under Paragraph 56 in lieu of a bill, if the United States prevails in the dispute, the Settling Work Defendants shall, within 45 days of receipt of a bill for those costs, pay the sums due (with accrued interest) to the United States as described in Paragraph 56. If the Settling Work Defendants prevail concerning any aspect of the contested costs, the Settling Work Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner described in Paragraph 56; Settling Work Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Work Defendants' obligation to reimburse the United States for its Future Response Costs.

58. <u>Payments by Settling Federal Agencies.</u>

a. Settling Federal Agencies shall pay a share of the costs of the Work, the Features Tasks, and Future Response Costs through periodic contributions to the Liberty Industrial Finishing Site Trust Account, as provided pursuant to Paragraph 58.b of this Consent Judgment.

b. The Settling Federal Agencies shall pay:

(I) 50% of the Net funding for the Work and the Features Tasks, to the extent that such costs are consistent with the NCP and this Consent Judgment; and

(II) 50% of the amount of Net Future Response Costs.

For purposes of this Paragraph 58.b, the term "Net" means the actual amounts paid by Settling Work Defendants for the Work and the Features Tasks (including the expenses of the Settling Work Defendants' Project Coordinator and retained consultants), and Future Response Costs, less amounts received by the Liberty Industrial Finishing Site Trust Account from or on account of: (A) the Owner Settling Defendants or any other Settling Defendant (other than Coltec Industries, Inc. or Goodrich Corporation), (B) Liberty Aero Corporation, or (C) other persons, if any, who may settle with or otherwise pay to Settling Defendants and Settling Federal Agencies for the Work, the Features Tasks, or for Future Response Costs on account of claims against them for potential responsibility for the Site pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

The Settling Federal Agencies shall make periodic payments into the Liberty Industrial Finishing Site Trust Account, in accordance with the following:

(i) As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agencies, will pay $250,000, by deposit into the Liberty Industrial Finishing Site Trust Account.

(ii) Thereafter, and after the initial $250,000 deposited pursuant to subparagraph 58.b.(i) has been applied toward the Settling Federal Agencies' share of "Qualifying Expenditures," the United States, on behalf of the Settling Federal Agencies, will

26

initiate the process to pay, by deposit into the Liberty Industrial Finishing Site Trust Account, the appropriate Settling Federal Agencies' share of Qualifying Expenditures for the preceding semi-annual period. For purposes of this Paragraph 58.b, the term "Qualifying Expenditures" means those expenditures that have been made for performance of Work and Features Tasks (including the expenses of the Settling Work Defendants' Project Coordinator and retained consultants), to the extent that such expenditures are consistent with the NCP, or for reimbursement of Future Response Costs pursuant to Paragraph 56 of this Consent Judgment, and provided that such costs have actually been disbursed for such purposes. Settling Federal Agencies will make best efforts (A) to review and, if appropriate, approve such expenditures as Qualifying Expenditures within sixty (60) days of receipt of documentation, as set forth in subparagraph 58.b(iii), enabling Federal Agencies to make such determination; and (B) to deposit such amount into the Liberty Industrial Finishing Site Trust Account as soon as reasonably practicable.

(iii) On a semi-annual basis, the Settling Work Defendants' Project Coordinator shall provide to the Settling Federal Agencies a claim for payment. For the covered period, the claim for payment shall include (A) an invoice for the costs of performance of the Work and the Features Tasks, (B) an invoice for the expenses of the Settling Work Defendants' Project Coordinator and consultants selected and retained by the Settling Work Defendants to advise and assist their Project Coordinator in carrying out the Work and the Features Tasks, (C) copies of the Liberty Industrial Finishing Site Trust Account statements, (D) sufficient documentation to allow verification of the accuracy of the costs and expenses claimed, (E) confirmation from the Settling Work Defendants that such costs and expenses have actually been disbursed, and (F) a statement by the Project Coordinator, the Settling Work Defendants, and the entity(ies) performing the Work and the Features Tasks that such costs and expenses were properly incurred in connection with work performed in compliance with the terms of this Consent Judgment or the Features AOC, and are consistent with the NCP.

59.     The Parties to this Consent Judgment recognize and acknowledge that the payment obligations of the Settling Federal Agencies under this Consent Judgment can only be paid from appropriated funds legally available for such purpose. Nothing in this Consent Judgment shall be interpreted or construed as a commitment or requirement that any Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

60.     Payments by BeazerEast, Inc. and Koch-Glitsch, LP.  BeazerEast, Inc. and Koch-Glitsch, LP, jointly and severally, shall, within thirty days of the Effective Date of this Consent Judgment, deposit $1,254,000 into the Liberty Industrial Finishing Site Trust Account, to be used solely to help fund performance of the Work and/or payment of Future Response Costs.

## XVII. INDEMNIFICATION AND INSURANCE

61.     Settling Work Defendants' Indemnification of the United States

a.     The United States does not assume any liability by entering into this agreement or by virtue of any designation of Settling Work Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Settling Work Defendants shall indemnify, save and hold harmless the United States (with the exception of the Settling Federal Agencies) and its officials, agents, employees, contractors, subcontractors, or representatives for or from

27

any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Work Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Judgment, including, but not limited to, any claims arising from any designation of Settling Work Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, the Settling Work Defendants agree to pay the United States (with the exception of the Settling Federal Agencies) all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Work Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Judgment.  The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Work Defendants in carrying out activities pursuant to this Consent Judgment.  Neither the Settling Work Defendants nor any such contractor shall be considered an agent of the United States.

b.      The United States shall give Settling Work Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 61, and shall consult with Settling Work Defendants prior to settling such claim.

62.      Settling Work Defendants waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Work Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Work Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Work Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

63.      No later than 15 days before commencing any on-site Work, Settling Work Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 52.b of Section XIV (Certification of Completion) comprehensive general liability insurance with limits of ten million dollars, combined single limit, and automobile liability insurance with limits of ten million dollars, combined single limit, naming the United States as an additional insured.  In addition, for the duration of this Consent Judgment, Settling Work Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Work Defendants in furtherance of this Consent Judgment.  Prior to commencement of the Work under this Consent Judgment, Settling Work Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy.  Settling Work Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date.  If Settling Work Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or

28

insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Work Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

64.     "Force majeure," for purposes of this Consent Judgment, is defined as any event arising from causes beyond the control of the Settling Work Defendants, of any entity controlled by Settling Work Defendants, or of Settling Work Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Judgment despite Settling Work Defendants' best efforts to fulfill the obligation.  The requirement that the Settling Work Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible.  "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards or failure to make payments described in Section XVI (Payments for Response Costs).

65.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Judgment, whether or not caused by a force majeure event, the Settling Work Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Chief of the New York Remediation Branch, Emergency and Remedial Response Division, EPA Region II, within 48 hours of when Settling Work Defendants first knew that the event might cause a delay.  Within 5 days thereafter, Settling Work Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Work Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Work Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  The Settling Work Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Settling Work Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Settling Work Defendants shall be deemed to know of any circumstance of which Settling Work Defendants, any entity controlled by Settling Work Defendants, or Settling Work Defendants' contractors knew or should have known.

66.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Judgment that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Work Defendants in writing of its decision.  If EPA

agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Work Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

67.    If the Settling Work Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Work Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Work Defendants complied with the requirements of Paragraphs 64 and 65, above. If Settling Work Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Work Defendants of the affected obligation of this Consent Judgment identified to EPA and the Court.

## XIX. DISPUTE RESOLUTION

68.    Unless otherwise expressly provided for in this Consent Judgment, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Judgment. However, the procedures set forth in this Section shall not apply to. actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

69.    Any dispute which arises under or with respect to this Consent Judgment shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

70.    Statements of Position.

a.    In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 14 days after the conclusion of the informal negotiation period, Settling Work Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Work Defendants. The Statement of Position shall specify the Settling Work Defendants' position as to whether formal dispute resolution should proceed under Paragraph 71 or Paragraph 72.

b.    Within 14 days after receipt of Settling Work Defendants' Statement of Position, EPA will serve on Settling Work Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 71 or 72. Within 14 days after receipt of EPA's Statement of Position, Settling Work Defendants may submit a Reply.

c.    If there is disagreement between EPA and the Settling Work Defendants as to whether dispute resolution should proceed under Paragraph 71 or 72, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Work Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 71 and 72.

71.    Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Judgment; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Judgment. Nothing in this Consent Judgment shall be construed to allow any dispute by Settling Work Defendants regarding the validity of the ROD's provisions.

a.    An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.    The Director of the Emergency and Remedial Response Division ("ERRD"), EPA Region II, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 71.a. This decision shall be binding upon the Settling Work Defendants, subject only to the right to seek judicial review pursuant to Paragraph 71.c and d.

c.    Any administrative decision made by EPA pursuant to Paragraph 71.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Work Defendants with the Court and served on all Parties within 10 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Judgment. The United States may file a response to Settling Work Defendants' motion.

d.    In proceedings on any dispute governed by this Paragraph, Settling Work Defendants shall have the burden of demonstrating that the decision of the ERRD Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 71.a.

72.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.    Following receipt of Settling Work Defendants' Statement of Position submitted pursuant to Paragraph 70, the ERRD Director, EPA Region II, will issue a final decision resolving the dispute. The ERRD Director's decision shall be binding on the Settling

Work Defendants unless, within 10 days of receipt of the decision, the Settling Work Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Judgment. The United States may file a response to Settling Work Defendants' motion.

b.    Notwithstanding Paragraph N of Section I (Background) of this Consent Judgment, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

73.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Work Defendants under this Consent Judgment, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 82. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Judgment. In the event that the Settling Work Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. STIPULATED PENALTIES

74.    Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 75 and 76 to the United States for failure to comply with the requirements of this Consent Judgment which are specified below and which are applicable to them under the terms of this Consent Judgment, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Work Defendants shall include completion of the activities under this Consent Judgment or any work plan or other plan approved under this Consent Judgment identified below in accordance with all applicable requirements of law, this Consent Judgment, and any plans or other documents approved by EPA pursuant to this Consent Judgment and within the specified time schedules established by and approved under this Consent Judgment.

75.    Stipulated Penalty Amounts.

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 75.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 2,000 | 1st through 14th day |
| $ 4,000 | 15th through 30th day |
| $ 8,000 | 31st day and beyond |

b.    Compliance Milestones.

(1)    submission and, if necessary, revision and resubmission of any plan, report, or other deliverable required by Section VI (Performance of the Work by

Settling Work Defendants) or by the SOW or by any plan which is prepared pursuant to Section VI or the SOW and approved by EPA;

(2)     any deadline imposed by Section VI (Performance of the Work by Settling Work Defendants) or by the SOW or by any plan which is prepared pursuant to Section VI or the SOW and approved by EPA;

(3)     obligations imposed by Section XV (Emergency Response);

(4)     obligations imposed by Section IX (Access and Institutional Controls);

(5)     performance of the Remedial Design in accordance with the ROD, the approved Remedial Design Work Plan, and this Consent Judgment;

(6)     implementation of the Remedial Action in accordance with the ROD, the approved Remedial Design Reports and approved Remedial Action Work Plan, the approved O&M Plan and O&M Manual, and this Consent Judgment;

(7)     modification of the SOW or related work plans pursuant to Paragraph 15 and implementation of the work called for by such modifications in accordance with the modified SOW or work plan;

(8)     performance of studies and investigations and further response actions pursuant to Section VII (Remedy Review); and

(9)     any other requirement of this Consent Judgment that applies to Settling Defendants or Settling Work Defendants and that is not identified in Subparagraph 76.b.

76.     <u>Stipulated Penalty Amounts.</u>

a.     The following stipulated penalties shall accrue per violation per day for any noncompliance with the requirements identified in Subparagraph 76.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th day |
| $ 2,500 | 15th through 30th day |
| $ 5,000 | 31st day and beyond |

b.     <u>Compliance Milestones.</u>

(1)     permitting split or duplicate samples, quality assurance, and other requirements pursuant to Section VIII (Quality Assurance, Sampling, and Data Analysis);

(2)     designation of Settling Work Defendants' Project Coordinator as required by Section XII (Project Coordinators);

(3)     obligations imposed by Section XIII (Assurance of Ability to Complete Work);

33

(4)     timely submission and, if necessary, revision and resubmission of the name, title and qualifications of the proposed Supervising Contractor pursuant to Section VI (Performance of the Work by Settling Work Defendants);

(5)     requirements set forth in Section XIV (Certification of Completion), including, *inter alia*, both the requirement to make the certification and the requirement that the certification be truthful;

(6)     timely notification regarding any delay or anticipated delay, consistent with Paragraph 65;

(7)     indemnification and insurance requirements set forth in Section XVII (Indemnification and Insurance);

(8)     requirements set forth in Section X (Reporting Requirements);

(9)     timely submission of written notification of any off-site shipment of Waste Material from the Site to an out-of-state waste management facility pursuant to Paragraph 17;

(10)    submission of documents and other information in accordance with Section XXIV (Access to Information), and

(11)    payments required by Section XVI (Payments for Response Costs).

77.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 92 of Section XXI (Covenants by Plaintiff), Settling Work Defendants shall be liable for a stipulated penalty in the amount of $1,000,000 in addition to any other stipulated penalties for which they are liable under this Section.

78.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Work Defendants of any deficiency; (2) with respect to a decision by the ERRD Director, EPA Region II, under Paragraph 71.b or 72.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Work Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Judgment.

79.     Following EPA's determination that Settling Work Defendants or Settling Defendants have failed to comply with a requirement of this Consent Judgment, EPA may give Settling Work Defendants or Settling Defendants, as the case may be, written notification of the same and describe the noncompliance. EPA may send the Settling Work Defendants or Settling

34

Defendants, as the case may be, a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Work Defendants or Settling Defendants of a violation.

80.     All penalties accruing under this Section shall be due and payable to the United States within 30 days of the given Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless such Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the United States under this Section shall be made by EFT in the manner provided in Paragraph 56 a. and b.

81.     The payment of penalties shall not alter in any way Settling Work Defendants' obligation to complete the performance of the Work required under this Consent Judgment.

82.     Penalties shall continue to accrue as provided in Paragraph 78 during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15 days of the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Work Defendants or Settling Defendants, as the case may be, shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c.     If the District Court's decision is appealed by any Party, Settling Work Defendants or Settling Defendants, as the case may be, shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to the given Settling Defendants to the extent that they prevail.

83.     If Settling Defendants fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest. Such Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 80.

84.     Nothing in this Consent Judgment shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Consent Judgment or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Judgment.

85.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Judgment.

## XXI.  COVENANTS BY PLAINTIFF

86.    In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Judgment, and except as specifically provided in Paragraphs 88, 89, and 91 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA relating to the Site.  For the Settling Work Defendants, except with respect to future liability, these covenants not to sue shall take effect upon the Effective Date of the Consent Judgment.  With respect to future liability, these covenants not to sue shall take effect as to the Settling Work Defendants upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 52.b of Section XIV (Certification of Completion).  For BeazerEast, Inc. and  Koch-Glitsch, LP, these covenants not to sue shall take effect upon the receipt by the Liberty Industrial Finishing Site Trust Account of the payment required from those parties by Paragraph 60 of this Consent Judgment.  These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Judgment.  These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

87.    In consideration of the payments that will be made by the Settling Federal Agencies under the terms of the Consent Judgment, and except as specifically provided in Paragraphs 88, 89, and 91 of this Section, EPA covenants not to take administrative action against the Settling Federal Agencies pursuant to Sections 106 and 107(a) of CERCLA relating to the Site.  Except with respect to future liability, EPA's covenant shall take effect upon the receipt by the Liberty Industrial Finishing Site Trust Account of the $250,000 payment required from the Settling Federal Agencies by Paragraph 58.b.(i) of this Consent Judgment.  With respect to future liability, EPA's covenant shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 52.b of Section  XIV (Certification of Completion).  EPA's covenant is conditioned upon the satisfactory performance by Settling Federal Agencies of their obligations under this Consent Judgment.  EPA's covenant extends only to the Settling Federal Agencies and does not extend to any other person.

88.    United States' Pre-certification Reservations.  Notwithstanding any other provision of this Consent Judgment, the United States reserves, and this Consent Judgment is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Work Defendants, and EPA reserves the right to issue an administrative order seeking to compel the Settling Federal Agencies,

     a.    to perform further response actions relating to the Site, or

     b.    to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

          (1)    conditions at the Site, previously unknown to EPA, are discovered, or

          (2)    information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

89.   <u>United States' Post-certification Reservations</u>.  Notwithstanding any other provision of this Consent Judgment, the United States reserves, and this Consent Judgment is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Work Defendants, and EPA reserves the right to issue an administrative order seeking to compel the Settling Federal Agencies,

a.   to perform further response actions relating to the Site, or

b.   to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

(1)   conditions at the Site, previously unknown to EPA, are discovered, or

(2)   information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

90.   For purposes of Paragraph 88, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the ROD for the Site and the administrative record supporting the ROD.  For purposes of Paragraph 89, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the ROD, the administrative record supporting the ROD, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Judgment prior to Certification of Completion of the Remedial Action.

91.   <u>General reservations of rights</u>.  The United States reserves, and this Consent Judgment is without prejudice to, all rights against Settling Defendants, and EPA and the federal natural resource trustees reserve, and this Consent Judgment is without prejudice, to all rights against Settling Federal Agencies, with respect to all matters not expressly specified in Paragraphs 86 and 87.  Notwithstanding any other provision of this Consent Judgment, the United States reserves all rights against Settling Defendants, and EPA and the federal natural resource trustees reserve all rights against Settling Federal Agencies, with respect to:

a.   claims based on a failure by Settling Defendants or the Settling Federal Agencies to meet a requirement of this Consent Judgment;

b.   liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

      c.     liability based upon the Settling Defendants' ownership or operation of the Site, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Judgment by the Settling Defendants;

      d.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

      e.     criminal liability;

      f.     liability for violations of federal or state law which occur during or after implementation of the Remedial Action;

      g.     liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 15 (Modification of the SOW or Related Work Plans);

      h.     liability for Plume B, including but not limited to liability for the implementation of, and for the costs of the implementation of, that portion of the remedy selected in the ROD which is focused on Plume B;

      i.     liability for the Features Tasks, to the extent the Features Tasks are not fully and properly carried out under the Features AOC, including but not limited to liability for the implementation of, and for the costs of the implementation of the Features Tasks; and

      j.     liability for the Interim Groundwater Tasks, to the extent the Interim Groundwater Tasks are not fully and properly carried out under the Interim Groundwater UAO, including but not limited to liability for the implementation of, and for the costs of the implementation of the Interim Groundwater Tasks.

      92.     <u>Work Takeover</u>  In the event EPA determines that Settling Work Defendants have ceased implementation of any portion of the Work, are seriously or repeatedly deficient or late in their performance of the Work, or are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary.  Settling Work Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 71, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph.  Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that Settling Work Defendants shall pay pursuant to  Section XVI (Payment for Response Costs).

      93.     Notwithstanding any other provision of this Consent Judgment, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. Covenants by Settling Defendants and Settling Federal Agencies

      94.     <u>Covenant Not to Sue by Settling Defendants.</u>  Subject to the reservations in Paragraph 96, Settling Defendants hereby covenant not to sue and agree not to assert any claims

or causes of action against the United States with respect to the Site or this Consent Judgment, including, but not limited to:

        a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

        b.    any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site or any claim for contribution or reimbursement including those that may arise under State law; or

        c.    any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

    Except as provided in Paragraph 103 (waiver of claim-splitting defenses), these covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 88, 89, 91.b - 91.d or 91.g - 91.j, but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

    95.    <u>Covenant by Settling Federal Agencies.</u>  Settling Federal Agencies hereby agree not to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law with respect to the Site or this Consent Judgment.  This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Judgment) as lead or support agency under the NCP (40 C.F.R. Part 300).

    96.    The Settling Defendants reserve, and this Consent Judgment is without prejudice to:

    (a)  claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Work Defendants' plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA; and

    (b) contribution claims against the Settling Federal Agencies in the event any claim is asserted by the United States against the Settling Defendants under the authority of or under Paragraphs 88, 89, 91.b - 91.d, or 91.g - 91.j of Section XXI (Covenants by Plaintiff), but

only to the same extent and for the same matters, transactions, or occurrences as are raised in the claim of the United States against Settling Defendants.

(c) claims, if any, against the United States on account of the failure by Settling Federal Agencies to comply with their obligations under this Consent Judgment.

97.    Nothing in this Consent Judgment shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

98.    Settling Defendants agree not to assert any claims for contribution against the Town of Oyster Bay for response actions taken or to be taken and response costs incurred or to be incurred by the United States or any other person with respect to the "Existing Contamination" (as that term is defined in Paragraph 8.f. of the Prospective Purchaser Agreement), provided that nothing herein is intended to affect any claims by the Owner Settling Defendants against the Town of Oyster Bay for compensation in connection with the Town's taking by eminent domain of property owned by any Owner Settling Defendant.

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

99.    Except as provided in Paragraph 98 (Waiver of Claims Against Town of Oyster Bay) nothing in this Consent Judgment shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Judgment. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Judgment may have under applicable law. Except as provided in Paragraph 98 (Waiver of Claims Against Town of Oyster Bay), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

100.   The Parties agree, and by entering this Consent Judgment this Court finds, that the Settling Defendants and the Settling Federal Agencies are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Judgment. For purposes of the preceding sentence, the "matters addressed" in this Consent Judgment are all response actions taken or to be taken and all response costs incurred or to be incurred by the United States or any other person with respect to the Site. The "matters addressed" in this settlement do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Judgment (except for claims for failure to comply with this Consent Judgment), in the event that the United States asserts rights against Settling Defendants (or EPA or the federal natural resource trustees asserts rights against Settling Federal Agencies) coming within the scope of such reservations.

101.   The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Judgment they will notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

102.   The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Judgment they will notify in

writing the United States within 10 days of service of the complaint on them.  In addition, Settling Defendants shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

103.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants by Plaintiff).

## XXIV. ACCESS TO INFORMATION

104.    Settling Defendants shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Judgment, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work.  Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

105.    Business Confidential and Privileged Documents.

a.    Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Judgment to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendants.

b.    The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Plaintiff with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Judgment shall be withheld on the grounds that they are privileged.

106.    No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. RETENTION OF RECORDS

107.    Until 10 years after the Settling Defendants' receipt of EPA's notification pursuant to Paragraph 53.b of Section XIV (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site. Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

108.    At the conclusion of this document retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendants shall deliver any such records or documents to EPA. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege, they shall provide the Plaintiff with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Judgment shall be withheld on the grounds that they are privileged.

109.    Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

110.    The United States acknowledges that each Settling Federal Agency (1) is subject to all applicable Federal record retention laws, regulations, and policies; and (2) has certified that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXVI. NOTICES AND SUBMISSIONS

111.    Whenever, under the terms of this Consent Judgment, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided herein. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Judgment with respect to the United States, EPA, the Settling Federal Agencies, and the Settling Defendants, respectively.

As to the United States or EPA:

Five (5) copies of all work plans, design documents, and technical reports and one (1) copy of all required written communications shall be sent to:

> Chief, Central New York Remediation Section
> New York Remediation Branch
> Emergency and Remedial Response Division
> U.S. Environmental Protection Agency, Region II
> 290 Broadway, 20th Floor
> New York, NY  10007-1866
> > Attention: Lorenzo Thantu, Liberty Industrial Finishing
> > Superfund Site Remedial Project Manager

One copy of all required written communications other than work plans, design documents and technical reports shall also be sent to each of the following individuals:

> Chief, New York/Caribbean Superfund Branch
> Office of Regional Counsel
> U.S. Environmental Protection Agency, Region II
> 290 Broadway, 17th Floor
> New York, NY  10007-1866
> > Attention: Michael A. Mintzer, Liberty Industrial Finishing
> > Superfund Site Attorney

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Ben Franklin Station

Washington, D.C.  20044
    Re: DOJ Case Number 90-11-2-1222

United States Attorney
Eastern District of New York
One Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201
    Re: USAO File Number 2002V04083

As to the State:

When submitting to EPA any written communication required hereunder, Settling Defendants shall simultaneously submit one (1) copy of that communication (unless the given document is a plan or report, in which case five (5) copies shall be submitted) to:

NYS Department of Environmental Conservation
Division of Hazardous Waste Remediation
Bureau of Eastern Remedial Action
Federal Projects Section
625 Broadway, Albany, NY  12233-7015
    Attention:  Heather Bishop, Project Manager

As to the Settling Work Defendants:

Name and address of Settling Work Defendants' Project Coordinator

As to Settling Defendants other than Settling Work Defendants

At the address shown on the signature page of this Consent Judgment for such Settling Defendant

## XXVII. EFFECTIVE DATE

112.    The effective date of this Consent Judgment shall be the date upon which this Consent Judgment is entered by the Court, except as otherwise provided herein.

## XXVIII. RETENTION OF JURISDICTION

113.    This Court retains jurisdiction over both the subject matter of this Consent Judgment and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Judgment for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Judgment, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

114.    All disputes relating to the enforcement and interpretation of this Consent Judgment shall be determined in accordance with Federal law.

## XXIX. APPENDICES

115.    The following appendices are attached hereto and are part of this Consent Judgment:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the complete list of the Non-Owner Settling Defendants.

"Appendix E" is the complete list of the Owner Settling Defendants.

"Appendix F" is the complete list of the Settling Federal Agencies.

"Appendix G" is a draft easement.

"Appendix H" is a general depiction of the extent of Plume B.

## XXX. COMMUNITY RELATIONS

116.    Settling Work Defendants shall propose to EPA their participation in the Community Relations Plan to be developed by EPA. EPA will determine the appropriate role for the Settling Work Defendants under the Plan. Settling Work Defendants shall also cooperate with EPA in providing information regarding the Work to the public. As requested by EPA, Settling Work Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXXI. MODIFICATION

117.    Schedules specified in this Consent Judgment for completion of the Work may be modified by agreement of EPA and the Settling Work Defendants. All such modifications shall be made in writing.

118.    Except as provided in Paragraph 15 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Work Defendants, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(B)(ii). Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification. Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R.300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Work Defendants.

119.   Nothing in this Consent Judgment shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Judgment.

## XXXII. Lodging and Opportunity for Public Comment

120.   This Consent Judgment shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Judgment disclose facts or considerations which indicate that the Consent Judgment is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Judgment without further notice.

121.   If for any reason the Court should decline to approve this Consent Judgment in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII. Signatories/Service

122.   Each undersigned representative of a Settling Defendant to this Consent Judgment and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Judgment and to execute and legally bind such Party to this document.

123.   Each Settling Defendant hereby agrees not to oppose entry of this Consent Judgment by this Court or to challenge any provision of this Consent Judgment unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Judgment..

124.   Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Judgment. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

## XXXIV. Final Judgment

125.   This Consent Judgment constitutes the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Judgment. The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Judgment.

126.   Upon approval and entry of this Consent Judgment by the Court, this Consent Judgment shall constitute a final judgment between and among the United States and the Settling Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 27 DAY OF August, 2004

signed/

_____

United States District Judge

47

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

*3. 3. 04*
Date

*Tom Sansonetti*
THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

*3/25/04*
Date

*Catherine Adams Fiske/SMA*
Catherine Adams Fiske
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
One Gateway Center - Suite 616
Newton, MA 02493

*3/25/04*
Date

*Michael Rowe/SMA*
Michael Rowe
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986

*3/29/04*
Date

*Sandra L Levy*
Sandra L. Levy
Assistant United States Attorney
Eastern District of New York
U.S. Department of Justice
One Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201

FOR:  ROSLYNN R. MAUSKOPF
      United States Attorney
      Eastern District of New York
      48

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

Date: March 29, 2004

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York

By:

CHARLES P. KELLY
Assistant United States Attorney
610 Federal Plaza
Central Islip, NY 11722-4454

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.


9/30/03
Date

JANE M. KENNY
Regional Administrator, Region II
U.S. Environmental Protection Agency
290 Broadway
New York, NY 10007


9/30/03
Date

Michael A. Mintzer
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region II
290 Broadway
New York, NY 10007

50

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR <u>Coltec Industries, Inc.</u> */

<u>September 26, 2003</u>
Date

Signature: John R. Mayo
Name (print): John R. Mayo
Title: Assistant Secretary
Address: 5605 Carnegie Blvd.
Charlotte, NC 28209

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): John R. Mayo
Title: Assistant Secretary
Address: 5605 Carnegie Blvd.
Charlotte, NC 28209

Ph. Number: 704-731-1525

*/ A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR _Goodrich Corporation_ */

September 26, 2003
Date

Signature: _Keely D OBryan_
Name (print): _Keely J. OBryan_
Title: _Counsel for Goodrich Corporation_
Address: _Thompson Hine, LLP_
_3900 Key Center_
_127 Public Square_
_Cleveland, OH 44114_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _R. Leonard Rowe, Jr._
Title: _Legal Counsel II_
Address: _Goodrich Corporation_
_Four Coliseum Center_
_2730 West Tyvola Road_
_Charlotte, NC 28217_
Ph. Number: _704-423-5819_

*/  A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

51

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR _55 Moton Ave Co, LLC,*/_

9/26/03
Date

Signature: _Jffy Bosman_
Name (print): _____
Title: _Pres. Cubbies Prop. Inc Member_
Address: _____
_____
_____
_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____
Title: _____
Address: _____
_____
_____
Ph. Number: _____

*/ A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

51

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR _Cubbles Prop. Inc._ */

_9/26/03_
Date

Signature: _Jfry Cosman_ Pres.
Name (print): _____
Title: _Pres_ _____
Address: _____
_____
_____
_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____
Title: _____
Address: _____
_____
Ph. Number: _____

*/  A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

51

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR    Jefry Rosmarin    */

9/26/03
Date

Signature:    _Rosmarin (signature)_
Name (print):
Title:
Address:

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):
Title:
Address:

Ph. Number:

*/  A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

51

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR _J. JAY TANENBAUM_

_9/26/03_
Date

Signature: _J. Jay Tanenbaum_
Name (print): _J. JAY TANENBAUM_
Title: _____
Address: _____
_____
_____
_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____
Title: _____
Address: _____
_____
_____

Ph. Number: _____

*/ A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR _Ian Burman_ */

9-25-03
Date

Signature:
Name (print): _Ian Burman_
Title:
Address: _2545 Hempstead Tpke_
_Suite 401_
_East Meadow NY_
_11554_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _James Rigano_
Title:
Address: _Certilman Balin_
_1393 Veteran Memorial Hwy - Suite 3015_
_Hauppauge, NY 11788_
Ph. Number: _631 979-3000_

*/ A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR _Jerome Lazarus_ */

_9/25/03_
Date

Signature: _Jerome Lazarus_
Name (print): _JeRome LAZARUS_
Title: _____
Address: _21 Horseshoe Rd._
_Old Westbury NY_
_____
_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _James Rigano_
Title: _____
Address: _Certilman Balin_
_1393 Veterans Memorial Hwy._
_Hauppauge NY   11788_  Suite 301S
Ph. Number: _639 631 979 3000_

**\*/** A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR Liberty Associates                    */

By:   William Heller, General Partner

Sept 25, 2003
Date

Signature: *William Helle*
Name (print): WILLIAM HELLER
Title: GENERAL Partner
Address: 161 E 11th ave
Roselle N,J 07203

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____
Title: _____
Address: _____
_____
_____

Ph. Number: _____

*/  A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR   William Heller                    */

SEPT 25, 2003
Date

Signature: *William Heller*
Name (print): WILLIAM HELLER
Title: GENERAL Partner
Address: 161 E 11th Ave
Roselle N.J, 07203

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): 
Title: 
Address: 

Ph. Number: 

*/  A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

51

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR *Koch-Glitsch, LP*  */
*by and through its General Partner, KGGP, LP*

09/29/03
Date

Signature: *John M. Van Gelder*  BQK
Name (print): *John M. Van Gelder*
Title: *Director*
Address: *4111 E. 37th North*
*Wichita, Ks 67220*


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): *Bradley E. Haddock*
Title: *Bradley E. Haddock*
*Vice President & General*
*Counsel of KGGP, LLC*
Address: *4111 E. 37th North, Wichita, Ks 67220*
Ph. Number:  *(316) 828-5946*


*/ A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

THE UNDERSIGNED PARTY enters into this Consent Judgment in the matter of *United States v. Coltec Industries, Inc., et al.*, relating to the Liberty Industrial Finishing Superfund Site.

FOR :   BEAZER EAST, INC., on its behalf and on behalf of Lamtex Industries, Inc. and their past and present subsidiaries, parent companies, predecessors, and successors   */

_____

Date

Signature: _Jill M. Blundon_

Name (print): _Jill M. Blundon_

Title: _Vice President_

Address: _One Oxford Ctr._
_Suite 3000_
_Pittsburgh, PA  15219_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____

Title: _____

Address: _____

_____

Ph. Number: _____

*/  A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

51